1
2
3
4                        UNITED STATES DISTRICT COURT
5                       NORTHERN DISTRICT OF CALIFORNIA
6
7    DAVID G.,
                       Plaintiff,              Case No.  19-cv-03308-DMR
8
9            v.                                 **ORDER ON CROSS MOTIONS FOR**
                                                **SUMMARY JUDGMENT**
10   ANDREW M. SAUL,
                                                Re: Dkt. Nos. 18, 27
                       Defendant.
11

12          Plaintiff David G. moves for summary judgment to reverse the Commissioner of the Social

13   Security Administration's (the "Commissioner's") final administrative decision, which found

14   Plaintiff not disabled and therefore denied his application for benefits under Titles II and XVI of

15   the Social Security Act, 42 U.S.C. § 401 et seq.  [Docket No. 18.]  The Commissioner cross-

16   moves to affirm.  [Docket No. 27.]  For the reasons stated below, the court grants in part and

17   denies in part Plaintiff's motion and denies the Commissioner's motion.

18   **I.      PROCEDURAL HISTORY**

19          Plaintiff filed applications for Social Security Disability Insurance ("SSDI") and

20   Supplemental Security Income ("SSI") benefits on May 29, 2015, alleging disability beginning

21   September 10, 2014.  Administrative Record ("AR") 249-58.  An Administrative Law Judge

22   ("ALJ") held a hearing and issued an unfavorable decision on December 8, 2017.  AR 25-40.  The

23   ALJ found that Plaintiff has the following severe impairments: left shoulder degenerative joint

24   disease; diabetes mellitus with diabetic neuropathy; status post cervical spine fusion surgery;

25   lumbar degenerative disc disease; planta fasciitis; and obesity.  A.R. 31.  The ALJ found that

26   Plaintiff's other medical conditions, including obstructive sleep apnea, were non-severe

27   impairments.  A.R. 31.

28          The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

United States District Court
Northern District of California

> [He can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except: the claimant can frequently balance; he can rarely climb ropes, ladders, scaffolds, stairs, and ramps; he can occasionally reach overhead and occasionally feel; he can stand and walk for two hours at a time, but then would need to rest for 10 minutes before standing and walking again; and he should avoid concentrated exposure to workplace hazards, such as unprotected heights and moving machinery.

A.R. 34.

Relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform jobs existing in significant numbers in the national economy, including cafeteria attendant and retail sales assistant, the ALJ concluded that Plaintiff is not disabled. A.R. 38-39.

After the Appeals Council denied review, Plaintiff sought review in this court. [Docket No. 1.]

## II. ISSUES FOR REVIEW

1. Did the ALJ err in concluding that Plaintiff's sleep apnea is not a severe impairment?

2. Did the ALJ err in evaluating Plaintiff's credibility?

3. Did the ALJ err in weighing the medical evidence?

4. Is the ALJ's determination at step five supported by substantial evidence?

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec.*

United States District Court
Northern District of California

1  *Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

2         If the evidence reasonably could support two conclusions, the court "may not substitute its

3  judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112

4  F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "Finally, the court will not reverse an ALJ's

5  decision for harmless error, which exists when it is clear from the record that the ALJ's error was

6  inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d

7  1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

8  **IV.    DISCUSSION**

9         **A.    Determination of Plaintiff's Severe Impairments**

10        Plaintiff argues that the ALJ erred in finding that his sleep apnea is not a severe

11 impairment.

                      **1.    Legal Standard**

12

13        At step two of the five-step sequential evaluation for disability claims, the ALJ must

14 determine whether the claimant has one or more severe impairments that significantly limit a

15 claimant's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii) and (c);

16 416.920(a)(4)(ii) and (c).  "Basic work activities are abilities and aptitudes necessary to do most

17 jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying

18 or handling."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quotation omitted).  The

19 Ninth Circuit has held that "the step-two inquiry is a de minimis screening device to dispose of

20 groundless claims."  *Id.* (citation omitted).  "An impairment or combination of impairments can be

21 found 'not severe' only if the evidence establishes a slight abnormality that has no more than a

22 minimal effect on an individual[']s ability to work."  *Id.* (quotations omitted).  In addition, when

23 assessing a claimant's RFC, an ALJ must consider all of the claimant's medically determinable

24 impairments, both severe and non-severe.  20 C.F.R. §§ 416.920(e), 416.945; *see Carmickle v.*

25 *Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008); *see also* SSR 96-8p, 1996 WL

26 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions

27 imposed by all of an individual's impairments [because] limitations due to such a 'not severe'

28 impairment may prevent an individual from performing past relevant work or may narrow the

United States District Court
Northern District of California

range of other work that the individual may still be able to do.").

## 2.   Analysis

The ALJ found that Plaintiff has the following severe impairments: left shoulder degenerative joint disease; diabetes mellitus with diabetic neuropathy; status post cervical spine fusion surgery; lumbar degenerative disc disease; plantar fasciitis; and obesity.  A.R. 31.  The ALJ acknowledged that Plaintiff has been treated for obstructive sleep apnea and that he uses a CPAP machine, but noted that even though Plaintiff "reported some daytime sleepiness, he told his providers that he did not notice any sleepiness or near misses with driving."  A.R. 31 (citing A.R. 445 (Mar. 21, 2014 progress note)).  Based on this evidence, the ALJ concluded that Plaintiff's sleep apnea is non-severe because "the evidence fails to demonstrate that he has more than minimal limitations from" that impairment.  A.R. 31.

The court concludes that substantial evidence does not support the ALJ's determination that Plaintiff's sleep apnea is not a severe impairment.[1]  A severe impairment "must be established by objective medical evidence from an acceptable medical source," 20 C.F.R. § 416.921, and the ALJ must "consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity."  *Smolen*, 80 F.3d at 1290 (citations omitted).  The record contains objective medical evidence that Plaintiff was diagnosed with obstructive sleep apnea in 2010 and that he continues to use a CPAP machine to treat the condition.  *See e.g.*, A.R. 384, 400.  Additionally, Plaintiff described his fatigue at the hearing, testifying that "lately, [the CPAP machine] hasn't been effective," and that he experiences fatigue during the day.  A.R. 67.  He testified that he cannot "sleep past 4:00," and that at "12:00, I'm out, sleeping."  According to Plaintiff, "sleeping is a struggle" for him.  A.R. 68.  In concluding that Plaintiff's sleep apnea is non-severe, the ALJ relied on a single medical record from 2014 while ignoring Plaintiff's subsequent testimony in

---

[1] In its cross motion, the Commissioner argues that Plaintiff waived this argument on appeal because he never alleged disability due to his sleep apnea in his initial application for benefits, citing *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).  The Commissioner's argument on this point is without merit.  In *Meanel*, the Ninth Circuit held that "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."  172 F.3d at 1115.  Plaintiff's counsel argued in a pre-hearing brief that Plaintiff's sleep apnea is a severe impairment and the ALJ accordingly discussed the condition in her opinion.  *See* A.R. 372-75.

United States District Court
Northern District of California

2017 that the CPAP machine was no longer effective, that he continues to experience difficulty sleeping and fatigue which requires him to nap in the middle of the day, and that he had an appointment for sleep apnea scheduled for the following month. A.R. 67-68. The ALJ did not address this testimony in the opinion and did not explain why she discounted Plaintiff's statement that he needs daily daytime naps. The court concludes that the ALJ erred in finding that Plaintiff's sleep apnea is non-severe. On remand, the ALJ should further address Plaintiff's sleep apnea at step two of the sequential evaluation process and include any resulting limitations in a new RFC.

### B.   Credibility Assessment

Plaintiff next argues that the ALJ erred in assessing his credibility.

#### 1.   Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs*., 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)). However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id*. at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281

United States District Court
Northern District of California

5

United States District Court
Northern District of California

(citations omitted).  First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted).  Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony.  *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2.   Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are only partially supported by the medical evidence and other evidence in the record for the reasons explained in this decision."  A.R. 35.  As the ALJ did not find that Plaintiff is a malingerer, she was required to provide "specific, clear and convincing" reasons to discount his testimony.

The ALJ provided the following reasons for discounting Plaintiff's testimony: 1) "the records are not consistent with the claimant's allegations about the limiting effects of his peripheral neuropathy"; 2) Plaintiff "reported to his providers that he was walking daily, engaging in cardio exercises, and hanging about 100 signs a day for politicians, and traveling from Oakland to Sacramento"; and 3) Plaintiff requested a return to work letter in September 2015 and "reported that he was looking for a job in another field that could accommodate his restrictions."  A.R. 35-37.

As to the first reason, that the records are "not consistent with [Plaintiff's] allegations about the limiting effects of his peripheral neuropathy," the ALJ wrote that Plaintiff "was noted to

6

1    have full motor strength and normal muscle tone" with respect to his feet, and that "his gait was

2    normal and he could tandem and heel-to-toe walk."  A.R. 35 (citing A.R. 391-92, 439, 502-03).

3    Therefore, she wrote, Plaintiff's "coordination and the lack of atrophy suggest that he can stand

4    and walk for much longer periods than alleged."  A.R. 35.  Plaintiff does not dispute these records,

5    which include progress notes from March 2015 (A.R. 391-92), May 2014 (A.R. 439), and

6    observations by examining physician Parimal Shah, M.D., at the September 20, 2015 consultative

7    examination (A.R. 502-03).  This evidence provides a clear and convincing reason to find that

8    Plaintiff is not fully credible.

9         Next, the ALJ wrote that Plaintiff's reported activities "suggest that he can walk and stand

10   for longer periods, with periodic breaks to account for his peripheral neuropathy."  These activities

11   included "walking daily, engaging in cardio exercises, and hanging about 100 signs a day for

12   politicians, and traveling from Oakland to Sacramento."  A.R. 35-36 (citing A.R. 536, 594, 596).

13   Plaintiff argues that this is a legally insufficient reason to discount his credibility, noting that at the

14   hearing, he testified about hanging signs during an election and explained that he did not put up

15   the signs himself, but rode in the truck while someone else drove and put up signs.  A.R. 59.

16        The court concludes that inconsistency with Plaintiff's reported activities was a

17   permissible reason for discounting his testimony.  In support of this reason, the ALJ cited three

18   records.  The first, a progress note dated June 21, 2016, indicates that Plaintiff told a provider that

19   he was "making healthier food choices" with respect to his diabetes and was "trying to exercise."

20   A.R. 536.  The second, a November 30, 2016 progress note documenting a "telephone encounter,"

21   contained the notes, "Lifestyle: previously hanging up ~100 signs/day for politicians (traveled

22   from Oakland to Sacramento area)" and "Exercise/physical activity: cardio when hanging up

23   signs, now walk daily."  A.R. 594.  The third record the ALJ cited was part of the same November

24   30, 2016 progress note and contains the notation, "Exercise/physical activity: cardio, walk daily."

25   A.R. 596.  This evidence, which consists of Plaintiff's reports to his providers about the substance

26   and extent of his physical activities, is inconsistent with his testimony at the hearing about his

27   limitations.  The ALJ was entitled to weigh Plaintiff's own statements differently and "to draw

28   inferences logically flowing from the evidence," *Tommasetti*, 533 F.3d at 1040 (quoting *Sample v.*

United States District Court
Northern District of California

7

*Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)), including the inference that Plaintiff's hearing testimony was an attempt to minimize his prior reports. While the court may have interpreted the conflicting evidence differently, it must "uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Therefore, the inconsistencies in Plaintiff's reports about his activities are a clear and convincing reason to discount his credibility.

Finally, the ALJ noted that Plaintiff requested a return to work letter on September 25, 2015 and that he "reported that he was looking for another job in another field that could accommodate his restrictions." According to the ALJ, this "suggests that [Plaintiff's] symptoms were intermittent, and were not as severe as he alleges." A.R. 37. This is not a "specific, clear and convincing" reason for rejecting Plaintiff's testimony because it is not an accurate characterization of the record. Instead, the record reflects an exchange Plaintiff had with his provider about his confusion about his disability and unemployment insurance benefits. On September 25, 2015, Plaintiff sent the following message to his provider, Dr. Eunice Pyun:

> Hello dr. Pyun I'm writing you to see if you could write me a return to work as of 09/11/2015. I know i told you i was filing for social security disability and i am but they said to go on unemployment till it goes through so unemployment wants a return to work so if you could send me one that would help me out this is so crazy they help you out I mean if you cant work you cant work they sent me to a doctor last sunday in Concord this dr was horrible. But it takes so long to get social security disability but unemployment is the only way i can get paid so if you could help me out thank you

A.R. 511. In this message, Plaintiff communicated his confusion about the requirements for seeking unemployment insurance benefits. Although he requested a return to work letter, based on the context of the message it appears that he was doing so only because he was told he had to do so, and not because he was actually trying to return to work ("unemployment wants a return to work").

It appears that Dr. Pyun had a subsequent telephone conversation with Plaintiff, which she documented in a September 28, 2015 note:

> [Plaintiff] states applied for SS disability. He needs to go back on unemployment.

8

1

2

> He is confused as he was told by disability that he will need a work note allowing him to return to work as his disability application can take time to process.

3

4

> Discussed process of filing for disability.   He has peripheral neuropathy in b/l feet and hands and states it prevents him from doing his job/manual labor.

5

6

7

> Discussed if he is looking for job, looking into other job fields that that can accommate [sic] his restrictions (see prior WASF with restrictions).   Offered to extend his WASF with restrictions, he declined for now.   But will f/u with me if he needs updated forms/wasf.

8  A.R. 510.  Importantly, Dr. Pyun's note does not state that Plaintiff "reported that he was looking

9  for a job in another field that could accommodate his restrictions."  Instead, it appears to indicate

10  that she asked him *if* he was looking for such work.  While the note does not state Plaintiff's

11  response to this question, it indicates that Plaintiff refused Dr. Pyun's offer to extend his WASF,

12  or "work activity status form," with restrictions, undermining the ALJ's characterization of this

13  exchange.

14        Where the ALJ offers both valid and invalid reasons in support of an adverse credibility

15  finding, the court must evaluate whether the ALJ's errors were harmless.  *Batson v. Comm'r of*

16  *Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  If the court finds error with respect to a

17  portion of an ALJ's decision, it may nevertheless affirm the finding "so long as there remains

18  substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of

19  the ALJ's ultimate conclusion.'"  *Molina*, 674 F.3d at 1115 (quoting *Batson*, 359 F.3d at 1197).  In

20  other words, an ALJ's error is harmless where it is "inconsequential to the ultimate nondisability

21  determination."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

22  "[I]n each case we look at the record as a whole to determine whether the error alters the outcome

23  of the case."  *Molina*, 674 F.3d at 1115.

24        In this case, the ALJ's adverse credibility finding is supported by substantial evidence,

25  despite the error identified above.  The record contains scant evidence of the limiting effects of

26  Plaintiff's peripheral neuropathy.  The ALJ's findings that Plaintiff's symptoms are not supported

27  in the record specifically relate to his ability to perform work-related activities, such as walking

28  and standing for longer periods. *See Carmickle*, 533 F.3d at 1163 (finding that an ALJ's valid

1  reasons are not "relatively minor" when they are "specific findings related to [the claimant's]

2  ability to perform vocational functions"). Further, the ALJ's errors do not "negate the validity of

3  [her] ultimate conclusion." *See Batson*, 359 F.3d at 1187. In other words, the issue discussed

4  above with respect to the ALJ's characterization of Plaintiff's request for a return to work letter

5  from his provider does not undermine the ALJ's ultimate conclusion that Plaintiff overstated the

6  impact of his impairments on his work-related functionality.

7      In sum, the court finds that the ALJ's adverse credibility determination is supported by

8  substantial evidence.

9      **C.    Weight Given to Medical Opinions**

10     Plaintiff next argues that the ALJ erred in evaluating the medical opinion evidence.

11         **1.    Legal Standard**

12     Courts employ a hierarchy of deference to medical opinions based on the relation of the

13  doctor to the patient. Namely, courts distinguish between three types of physicians: those who

14  treat the claimant ("treating physicians") and two categories of "nontreating physicians," those

15  who examine but do not treat the claimant ("examining physicians") and those who neither

16  examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821,

17  830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining

18  physician's opinion, and an examining physician's opinion is entitled to more weight than a non-

19  examining physician's opinion. *Id.*

20     The Social Security Act tasks the ALJ with determining credibility of medical testimony

21  and resolving conflicting evidence and ambiguities. *Reddick*, 157 F.3d at 722. A treating

22  physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v.*

23  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an

24  uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*,

25  81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection

26  of examining psychologist's functional assessment which conflicted with his own written report

27  and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996).

28  If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate

United States District Court
Northern District of California

10

1   reasons" supported by substantial evidence to discount the treating physician's opinion.  *Lester*, 81

2   F.3d at 830.  The ALJ meets this burden "by setting out a detailed and thorough summary of the

3   facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."

4   *Reddick*, 157 F.3d at 725 (citation omitted).  "[B]road and vague" reasons do not suffice.

5   *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  This same standard applies to the

6   rejection of an examining physician's opinion as well.  *Lester*, 81 F.3d at 830-31.  A non-

7   examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of

8   an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990);

9   *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's

10  opinion may be persuasive when supported by other factors.  *See Tonapetyan v. Halter*, 242 F.3d

11  1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may

12  constitute substantial evidence when it is consistent with other independent evidence in the

13  record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion

14  given contradictory laboratory test results, reports from examining physicians, and testimony from

15  claimant).  An ALJ "may reject the opinion of a non-examining physician by reference to specific

16  evidence in the medical record."  *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).  An

17  opinion that is more consistent with the record as a whole generally carries more persuasiveness.

18  *See* 20 C.F.R. § 416.927(c)(4).

19         **1.   Analysis**

20         Plaintiff argues the ALJ erred by not giving sufficient weight to the opinions of Plaintiff's

21  treating physician, Eunice Liu, D.O.[2]  There are two opinions by Dr. Liu in the record: the first is a

22  "work activity status form" or "WASF" that appears effective July 1, 2015 through July 31, 2015.

23  A.R. 515.  The second is a May 31, 2017 Work Status Report in which Dr. Liu placed Plaintiff on

24  modified activity at work and at home from May 31, 2017 through November 30, 2017.  A.R. 646.

25  The ALJ discussed both in her opinion and gave "significant weight" to the July 2015 WASF.

26

27  _____

28  [2] There are references in the record to a "Eunice In Liu (D.O.)" and a "Eunice In Pyun (D.O.)"
    *See* A.R. 515, 646.  The parties treat this individual as one treating provider, suggesting a name
    change occurred.  The court uses the name that appears in the record under discussion.

United States District Court
Northern District of California

1    However, she gave only "little weight" to the May 2017 Work Status Report.  A.R. 37.

2       Although Plaintiff's brief discusses the opinions together, it appears that he challenges the

3    weight given to only one portion of Dr. Liu's May 2017 Work Status Report: specifically, Dr.

4    Liu's assessment that Plaintiff was limited to "occasionally" gripping and grasping with each

5    hand, with "occasionally" meaning "up to 25% of shift."  A.R. 646.  The ALJ did not discuss this

6    portion of Dr. Liu's Work Status Report, and Plaintiff argues that this was error.

7    The court concludes that any error with respect to Dr. Liu's May 2017 Work Status Report was

8    harmless.  Specifically, Dr. Liu's assessment that Plaintiff was restricted to only occasionally

9    using his hands for gripping and grasping was temporal, as it pertained to May 31, 2017 through

10    November 30, 2017.  It did not reflect an opinion or findings about Plaintiff's limitations beyond

11    that six-month period.  Accordingly, to the extent that the ALJ failed to discuss that limitation or

12    provide legally sufficient reasons for discounting it, the error was "inconsequential to the ultimate

13    nondisability determination."  *See Molina v. Astrue*, 674 F.3d 1104, 1115; *see also Treichler v.*

14    *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("'Even when the ALJ commits

15    legal error, we uphold the decision where that error is harmless.").

16       **D.**     **Step Five Determination**

17       Finally, Plaintiff challenges the ALJ's determination at step five of the sequential

18    evaluation process.  According to Plaintiff, the VE's testimony about the jobs that an individual

19    with Plaintiff's RFC can perform was not supported by substantial evidence.

20       "The hypothetical an ALJ poses to a vocational expert, which derives from the RFC,

21    'must set out *all* the limitations and restrictions of the particular claimant.'"  *Valentine v. Comm'r*,

22    574 F.3d 685, 690 (9th Cir. 2009) (citation omitted).  When a "hypothetical posed by the ALJ to

23    the vocational expert d[oes] not reflect all of [plaintiff's] limitations, the expert's opinion has no

24    evidentiary value and cannot support the ALJ's decision."  *Embrey v. Bowen*, 849 F.2d 418, 423

25    (9th Cir. 1988).

26       As discussed above, the ALJ erred in determining that Plaintiff's obstructive sleep apnea is

27    a non-severe impairment.  This error may have impacted the ALJ's assessment of Plaintiff's RFC,

28    which in turn may have affected the hypotheticals she posed to the VE.  Therefore, the court

cannot say that the ALJ's determination that Plaintiff could perform jobs that exist in the national economy is supported by substantial evidence.

**V.      CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part and denied in part.  This matter is remanded for further proceedings consistent with this opinion

**IT IS SO ORDERED.**

Dated: November 9, 2020



Donna M. Ryu
United States Magistrate Judge